IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELLEY V.,[1]                                         Case No. 6:18-cv-01760-SB

        Plaintiff,                              **OPINION AND ORDER**

    v.

ANDREW M. SAUL, Commissioner of Social
Security,

        Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

     Shelley V. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

For the reasons explained below, the Court reverses the Commissioner's decision and remands

for an award of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in May 1974, making her thirty-seven years old on May 1, 2012, the alleged disability onset date. (Tr. 36, 94, 124.) Plaintiff completed some college coursework and has no past relevant work. (Tr. 36, 65, 1180.) In her applications, Plaintiff alleges disability due to a back injury, post-traumatic stress disorder ("PTSD"), depression, anxiety, and chronic pain. (Tr. 94, 124.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on July 24, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 26.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on August 9, 2017. (Tr. 47-80.) On August 28, 2017, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 26-38.) On July 30, 2018, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6; Tr. 264-66.) Plaintiff now seeks judicial review of that decision. (Compl. at 1.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 26-38.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2012, the alleged disability onset date. (Tr. 28.) At step two, the ALJ determined that Plaintiff suffered from eight severe impairments: (1) osteoarthritis, (2) degenerative disc disease, (3) "degenerative joint disease of the shoulder with a partial tear," (4) fibromyalgia, (5) obesity, (6) PTSD, (7) major depressive disorder, and (8) "a panic disorder with agoraphobia." (Tr. 28-29.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 29.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff "can never climb ladders, ropes, or scaffolds," (2) Plaintiff "can occasionally crawl," (3) Plaintiff "can perform simple, routine tasks," and (4) Plaintiff can have "occasional contact with the general public and with coworkers." (Tr. 31.) At step four, the ALJ concluded that Plaintiff has no past relevant work. (Tr. 36.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a housekeeping cleaner, router, and bottle packer. (Tr. 61.)

**DISCUSSION**

In this appeal, Plaintiff argues that the ALJ erred by failing to: (1) provide specific, clear, and convincing reasons for discounting her symptom testimony; (2) provide germane reasons for discounting the lay witness testimony provided by her friend and neighbor, Vivian Barbour ("Barbour"); (3) provide specific and legitimate reasons for rejecting the opinion of her examining psychologist, Teresa Dobles, Psy.D. ("Dr. Dobles"); (4) account for the opinion of the non-examining state agency psychologist, Jan Jacobson, Ph.D. ("Dr. Jacobson"); and (5) provide germane reasons for rejecting the opinion of her treating therapist, Amy Kammerer ("Kammerer").

As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. The Court further concludes that Plaintiff satisfies the credit-as-true standard, and the Court does not have serious doubt about whether Plaintiff is disabled. Accordingly, the Court remands Plaintiff's case for an award of benefits.

## I. PLAINTIFF'S SYMPTOM TESTIMONY

### A. Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons

for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

**B.      Analysis**

In this case, there is no evidence of malingering and the ALJ determined that Plaintiff has provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 32, reflecting that the ALJ determined that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ did not meet that standard here.

**1.      Reported Activities**

The ALJ discounted Plaintiff's symptom testimony on the ground that it is inconsistent with her "reported activities." (Tr. 35.) In support of this finding, the ALJ noted that (1) Plaintiff can "perform adequate self-care, prepare simple meals, do household chores, and go out to the store," and (2) Plaintiff was "able to actively engage in parenting classes, be a foster parent, help

her friend with filing legal paperwork, make art and photo collages, actively engage in an online social group, clean her mom's house, take her dog for walks, go to the coast, take road trips, swim, and exercise 3-4 times per week by walking, biking, or using the elliptical." (Tr. 35) (citations omitted).

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165. Here, substantial evidence does not support the ALJ's finding that Plaintiff's level of activity is inconsistent with her claimed limitations. *See Garrison*, 759 F.3d at 1016 ("Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [the claimant's] level of activity [is] inconsistent with [the claimant's] claimed limitations would these activities have any bearing on [her] credibility.'") (citation omitted).

The ALJ noted that Plaintiff can perform adequate self-care, but the record shows that Plaintiff bathes less often due to pain and that Plaintiff exhibited "mildly bad breath and body odor" on examination. (Tr. 354, 1182.) Thus, Plaintiff's level of self-care is not inconsistent with her claimed limitations.

The ALJ also noted that Plaintiff can prepare simple meals, but the ALJ failed to explain how Plaintiff's ability to "use[] a lot of T.V. and microwave dinners" (Tr. 355) is inconsistent with her claimed limitations. *Cf. Fritz v. Berryhill*, 685 F. App'x 585, 586 (9th Cir. 2017) (holding that the ALJ failed to satisfy the clear and convincing reasons standard and noting that the ALJ "did not explain how" certain evidence "impacted [the claimant's] credibility"); *see also Rocha v. Berryhill*, 771 F. App'x 447, 448 n.2 (9th Cir. 2019) ("[A]n ALJ must *specifically*

identify the testimony [from the claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony.") (citation and quotation marks omitted).

Furthermore, the ALJ noted that Plaintiff can perform household chores and go to the store. The record, however, reveals that Plaintiff "does limited housework," Barbour, Plaintiff's daughter, and neighbors help Plaintiff complete housework, Plaintiff only shops about once a month, Plaintiff often rides in an electric cart at the store, and Plaintiff typically only "work[s] on a chore for 10 minutes" before needing to rest. (Tr. 54, 62, 67-68, 348, 355, 1181-82.) Thus, the ALJ's reliance on Plaintiff's ability to perform chores and go to the store was misplaced. *See Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) (explaining that an ALJ cannot "disregard a claimant's limitations in performing" his activities, and noting that the ALJ discounted the claimant's testimony based on, among other things, the claimant's ability to complete chores, but the "ALJ ignored evidence" that the claimant received help from family members and rarely left the house).

Additionally, the ALJ noted that Plaintiff was "able to actively engage in parenting classes, be a foster parent, help her friend with filing legal paperwork, make art and photo collages, actively engage in an online social group, clean her mom's house, take her dog for walks, go to the coast, take road trips, swim, and exercise 3-4 times per week by walking, biking, or using the elliptical." (Tr. 35.) The ALJ failed to consider these activities in their proper context. *See Scrogham v. Colvin*, 765 F.3d 685, 698-99 (7th Cir. 2014) (explaining that an ALJ errs by "consider[ing] evidence about [a claimant's] activities selectively, ignoring evidence that contradicted her findings," and noting that the ALJ cited the claimant's ability to mow his lawn, even though he testified that he "would be incapacitated for a couple hours" after mowing for ten minutes).

For example, the ALJ suggested that Plaintiff's ability to engage in parenting classes is inconsistent with her claimed limitations. The record, however, reveals that after the alleged onset date, the Department of Human Services ("DHS") placed Plaintiff's daughter in foster care based, in part, on the fact that Plaintiff was "experiencing severe anxiety, not sleeping at night, and sleeping heavily during the day."[2] (Tr. 1180; *see also* Tr. 976, stating that Plaintiff's daughter was "taken into foster care in July [2013] due to allegations of neglect"; Tr. 893, showing that in March 2013, Plaintiff complained to her provider about "increased PTSD symptoms" because her "abuser" would be "getting out of jail early next month"). In February 2014, after participating in several parenting classes, Plaintiff "graduated" from the parenting class program that DHS required Plaintiff to complete before her daughter could return home. (Tr. 509, 1021.) In the Court's view, it was not reasonable for the ALJ to conclude that the activities and sequence of events described above are inconsistent with Plaintiff's claim of disability because it is evident that Plaintiff's impairments greatly impacted her ability to function.

The ALJ also suggested that Plaintiff's ability to be a foster parent is inconsistent with her claimed limitations. However, the record reveals that DHS did "not approve" Plaintiff as "a foster parent because of her history with having an open case (her child placed in foster care for several months)," Plaintiff only provided shelter to the teenager because she came to her door bleeding and asking for help, and the teenager assisted Plaintiff with household chores. (Tr. 54,

---

[2] The record suggests that DHS was also concerned that Plaintiff might be "abusing prescription pain meds and psych meds," but nothing in record contradicts Plaintiff's report that she had "taken urinalysis tests whenever requested, and . . . [they] c[a]me back clean." (Tr. 509.) Plaintiff's provider also informed DHS that she had not banned Plaintiff "from receiving pain medication," nor had she observed Plaintiff "being intoxicated or under the influence of drugs." (Tr. 780.) Furthermore, Plaintiff "voluntarily went off Xanax" based on DHS' "accusations of prescription drug abuse," even though it increased Plaintiff's "anxiety, panic, and insomnia." (Tr. 647.)

57-58, 62, 1391.) The ALJ erred in finding this level of activity (i.e., allowing a teenager to stay in her home) inconsistent with Plaintiff's symptom testimony.

Moreover, the ALJ noted that Plaintiff once reported that she exercises "3-4 times per week by walking, biking, or using the elliptical," and she "occasionally swim[s] at [her apartment] complex." (Tr. 35, citing Tr. 1098, 1323, 1412.) The record, however, reveals that (1) Plaintiff weighs 325 pounds and suffers from severe obesity, (2) Plaintiff injured her right leg on December 1, 2012, several months after the alleged disability onset date, (3) Plaintiff did not transition from a cast to walking boot until May 7, 2013, (4) Plaintiff at times reported that she was not exercising, (5) Plaintiff at times reported that she was "limited in her exercise due to pain," or that her exercise was "[l]imited due to pain," (6) Plaintiff reported that her exercise consisted primarily of "tak[ing] her small dog outside for 'short [ten-minute] walks' but [she] is not able to exercise or be active with her daughter because of all the pain'" she experiences, and (7) Plaintiff reported that "she is in a lot of pain with her knees, ankles, and back, which interferes with her ability to walk like doctors have recommended." (Tr. 29, 657, 757, 811, 888, 1060, 1081, 1212, 1309, 1366, 1384, 1395.) The foregoing record evidence suggests that Plaintiff engaged in only minimal exercise during the relevant time period, which is not inconsistent with Plaintiff's claimed limitations. *See Bunner v. Berryhill*, No. 6:16-cv-02370-SI, 2018 WL 1558449, at *6 (D. Or. Mar. 30, 2018) (finding that the claimant's "minimal exercise (riding a recumbent bike for up to one-half mile) . . . [was] not inconsistent with his claimed limitations").

The ALJ also noted that Plaintiff makes art and photo collages, cleaned her mom's house, goes to the coast, and takes road trips. (Tr. 35, citing Tr. 506, 863, 1427.) Plaintiff testified that she uses a phone "app[]" to make photo collages. (Tr. 59-60.) Plaintiff also reported that she

"enjoys going to the coast and taking road trips," and that that she "clean[ed] up her [mother's] house" after she died. (Tr. 863.) It is not clear to the Court how Plaintiff's symptom testimony is undermined by her ability to use a phone app to make photo collages, the fact that she reported that she enjoys taking road trips, or her ability to clean her mom's house on one occasion, because the ALJ offered no explanation and the record fails to provide any details about how much work Plaintiff performed at her mother's house or how often Plaintiff goes on road trips.[3] *Cf. Trevizo*, 871 F.3d at 676 (rejecting the ALJ's reliance on the claimant's childcare activities because the record "provide[d] no details as to what [the claimant's] childcare activities involved").

Finally, in discounting Plaintiff's testimony, the ALJ noted that Plaintiff was able to engage in an online social group and help her friend file legal paperwork. (Tr. 35, citing Tr. 1206, 1322, 1403.) Plaintiff is a domestic violence survivor who experiences PTSD symptoms related to the "physical and emotional abuse" she experienced "in childhood and in relationships with men." (Tr. 1432.) Plaintiff helped her friend complete the paperwork for a domestic violence restraining order. (Tr. 1403.) This is not inconsistent with Plaintiff's testimony, as Plaintiff never claimed that she lacked the ability to fill out familiar forms. (*See* Tr. 1404, showing that Plaintiff "kn[ew]" what she was doing when it came to a restraining order). Nor is Plaintiff's ability to engage in an online Facebook group with other single moms inconsistent with her testimony. (*Cf.* Tr. 54-57, 61, 70, reflecting that Plaintiff told the ALJ that

---

[3] The Court reviewed over a decade's worth of Plaintiff's medical records and only identified one reference to Plaintiff ever taking a road trip. (*See* Tr. 1392, showing that Plaintiff reported that she "felt positive about taking both girls to the coast over spring break"). A single in-state road trip does not undermine Plaintiff's testimony. *See Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 17-1562-HZ, 2018 WL 5924505, at *5 (D. Or. Nov. 10, 2018) ("Nor does one trip to New Mexico to visit family undermine her testimony." (citing *Hostrawser v. Astrue*, 364 F. App'x 373, 378 (9th Cir. 2010))).

her anxiety is triggered primarily by crowds, leaving the house, males, unfamiliar people, and unfamiliar places).

For these reasons, the ALJ erred in discounting Plaintiff's testimony based on her activities.

### 2. Objective Medical Evidence

The ALJ also discounted Plaintiff's testimony on the ground that it was inconsistent with the objective medical evidence. (*See* Tr. 32-35, stating that the "medical record does not support" Plaintiff's symptom testimony, summarizing the objective medical evidence, and concluding that the "discussion of the treatment record shows that [Plaintiff's] allegations are not consistent with the medical record"; *see also* Def.'s Br. at 6, stating that "the ALJ provided two clear and convincing reasons," and citing conflicting "objective medical evidence" and Plaintiff's reported activities). As discussed above, the ALJ erred in discounting Plaintiff's testimony based on her activities. Thus, even if Plaintiff's testimony is not supported by the objective medical evidence, the ALJ cannot properly rely on that as the sole reason to discredit Plaintiff's testimony. *See Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony about debilitating mental and physical impairments) (citation omitted). Accordingly, the Court concludes that the ALJ erred in discounting Plaintiff's testimony. *See Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

## II.     LAY WITNESS TESTIMONY

### A.     Applicable Law

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The ALJ cannot disregard such testimony without providing reasons that are germane to each witness. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 10-1432, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted).

### B.     Analysis

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by her friend and neighbor, Barbour. (Pl.'s Br. at 28-29.) The Court agrees.

Barbour completed a third-party adult function report on February 13, 2015. (Tr. 353-60.) Barbour testified that Plaintiff suffers from chronic pain and anxiety that prevents her from "function[ing] very well," Plaintiff "does limited housework," Plaintiff's daughter, Barbour and her children, and neighbors assist Plaintiff with chores, Plaintiff's daughter is self-sufficient, Plaintiff's anxiety and pain affect her sleep, and she occasionally helps Plaintiff care for her hair.

(Tr. 353-55.) Barbour also testified that Plaintiff is in "pain most of the time and is in tears a lot of the time when [Barbour] come[s] to visit," and that unknown males trigger Plaintiff's anxiety. (Tr. 360.)

The ALJ stated that he could not assign significant weight to Barbour's testimony: "Significant weight could not be granted to [Barbour's] statements, as they are not consistent with the preponderance of medical and other evidence of record, including [Plaintiff's] own reports to her providers that she has a knack for helping others decorate and organize." (Tr. 36, citing Tr. 1223.)

The Commissioner argues that the ALJ appropriately discounted Barbour's testimony on the ground it is "'not consistent with' the 'medical and other evidence of record.'" (Def.'s Br. at 10.) The Commissioner does not address (or dispute) Plaintiff's argument that the ALJ improperly discounted Barbour's testimony based on Plaintiff's one-time statement that she has a knack for helping others decorate and organize. (*Compare* Pl.'s Br. at 28-29, *with* Def.'s Br. at 10-11.)

The Court is not persuaded by the Commissioner's argument. This case is very similar to *Gilbert v. Colvin*, No. 3:15-cv-05007, 2015 WL 4039338, at *5 (W.D. Wash. July 2, 2015). In that case, the ALJ discounted the claimant's parent's lay witness testimony because "it was 'inconsistent with the medical evidence of record' and thus did 'not support finding greater limitations than' the ALJ himself found." *Id.* The district court held that the ALJ erred because he failed to explain what medical evidence undermined the claimant's parent's lay witness testimony:

> The Court agrees with plaintiff that the ALJ's mere statement that the lay witness evidence was inconsistent with the medical evidence, without giving any idea as to what in the medical evidence was inconsistent therewith, is insufficiently specific in

> that it prevents the Court from determining whether or not the ALJ
> was in fact correct in so finding.

*Id.*; *see also McCann v. Colvin*, 111 F. Supp. 3d 1166, 1175 (W.D. Wash. 2015) ("[T]he ALJ provided no explanation for his assertions that Mr. Knutson's opinions were inconsistent with the overall medical record, Mr. McCann's daily activities, or his work history. . . . The ALJ's reasoning is not sufficiently specific because it is not clear which opinions he finds to be inconsistent with which parts of the record. Only those opinions that are actually inconsistent may be discounted. . . . The ALJ must provide an explanation for his determination.") (citations omitted).

Similarly here, the ALJ's reasoning was not sufficiently specific because the ALJ failed to explain what medical evidence undermined Barbour's testimony. Accordingly, the ALJ erred in discounting Barbour's testimony based on the medical evidence because the ALJ did not set forth the reasoning behind his decision in a way that allows for meaningful review. *See Gilbert*, 2015 WL 4039338, at *5 (same); *McCann*, 111 F. Supp. 3d at 1175 (same); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' . . . we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review.") (citation omitted).

The ALJ also erred in discounting Barbour's testimony based on Plaintiff's one-time statement about "helping friends to decorate and reorganize." (Tr. 1223.) Indeed, the record provides no details about what Plaintiff's decorating and reorganizing advice involved, which leaves open the possibility that Plaintiff simply gave feedback or performed little to no work. *Cf. Doto v. Berryhill*, No. 17-cv-01120-VKD, 2018 WL 4680212, at *20 (N.D. Cal. Sept. 28, 2018) ("Because the record contains no details regarding what [the claimant's] activities involved,

these activities . . . are not substantial evidence inconsistent with [the treating physician's] opinion.").

In summary, the ALJ failed to provide germane reasons for discounting Barbour's testimony.

## III. MEDICAL OPINION EVIDENCE

### A. Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (citation omitted).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

### B.  Dr. Jacobson's Opinion

Plaintiff argues that the ALJ failed to account for the opinion of the non-examining state agency psychologist, Dr. Jacobson. Specifically, Plaintiff argues that in formulating her RFC, the ALJ failed to account for Dr. Jacobson's opinion that she is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. (Pl.'s Br. at 18-20, citing Tr. 137.)

The Commissioner responds that the ALJ's RFC is "consistent with Dr. Jacobson's opinion." (Def.'s Br. at 16.) In support of his argument, the Commissioner notes that (1) Dr. Jacobson concluded that Plaintiff can perform simple tasks, (2) although Dr. Jacobson found that Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, Dr. Jacobson also stated that Plaintiff "can accept supervision delivered in a normative fashion," and thus (3) the ALJ "reasonably interpreted Dr. Jacobson's opinion to mean that Plaintiff could perform 'simple, routine tasks' and have 'only occasional contact with the general public and with co-workers.'" (Def.'s Br. at 17, citing Tr. 31 and Tr. 137.)

An ALJ errs when he fails to explain why he did not account for a portion of a physician's opinion in formulating the claimant's RFC. *See, e.g.*, *Harris v. Berryhill*, No. 17-1506, 2018 WL 3343219, at *11 (W.D. Wash. July 9, 2018) ("[The ALJ] entirely ignored that part of [the consulting physician's] opinions in his current decision, and thus essentially rejected it without giving any reasons for doing so. This was error."). In *Dennis v. Colvin*, No. 6:14-822-HZ, 2015 WL 3867506, at *4 (D. Or. June 20, 2015), for example, a psychologist opined that the claimant was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* The ALJ gave great weight to the psychologist's opinion and formulated an RFC that limited the claimant to work with a specific vocational preparation of

one or two that involved only simple work-related decisions, few workplace changes, no public interaction or teamwork, and occasional interaction with co-workers. *Id.* at *2-5. The district court held that the ALJ failed to account for the psychologist's opinion that the claimant was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors:

> When the ALJ credits the opinion of a medical source which includes [a moderate] limitation on the ability to interact appropriately with supervisors, the omission of this specific, concrete limitation in the RFC is error because it is a limitation not requiring 'capturing' or 'translation' and limitations on interactions with the public or coworkers do not address the separate dynamic created by the supervisory relationship. Thus, the ALJ erred by failing to include a supervisory-related limitation in the RFC.

*Id.* at *8; *see also Rachel H. v. Saul*, No. 3:18-cv-02020-SB, 2020 WL 954969, at *9 (D. Or. Feb. 27, 2020) ("Consistent with *Dennis*, the Court finds that the ALJ committed harmful error by failing to account for Drs. Holmes and Kennemer's opinion that Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors because it is not a limitation that requires 'capturing' or 'translation,' and because the ALJ's limitations on work tasks and public and co-worker interactions do not address Plaintiff's relationship with supervisors.").

Here, the ALJ assigned partial weight to Dr. Jacobson's opinion, but the ALJ did not address or provide any reasons for rejecting Dr. Jacobson's opinion that Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors: "[T]he undersigned has given partial weight to the state agency medical and psychological consultant's assessments . . . because evidence received at the hearing level shows that [Plaintiff] is more limited than determined by the state agency consultants." (Tr. 35) (citations omitted). The ALJ then concluded that Plaintiff could perform work that involved

"simple, routine tasks" and "only occasional contact with the general public and with co-workers." (Tr. 31.)

This Court cannot conclude that the ALJ's RFC is consistent with Dr. Jacobson's opinion for two reasons. First, the Court agrees with the holding in *Dennis* that limitations on interactions with the public or co-workers do not address the separate dynamic created by the supervisory relationship. Second, although Dr. Jacobson also stated that Plaintiff "can accept supervision delivered in a normative fashion" (Tr. 137), it does not necessarily follow that Plaintiff will have no difficulty accepting instructions or responding appropriately to criticism from supervisors. Accordingly, the ALJ erred by failing to include a supervisory-related limitation in Plaintiff's RFC.

### C.     Dr. Dobles' Opinion

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of her examining psychologist, Dr. Dobles. (Pl.'s Br. at 5-14.) The Court agrees.

The state agency referred Plaintiff to Dr. Dobles for comprehensive psychological evaluations in 2014 and 2017. In 2014, Dr. Dobles examined Plaintiff, conducted a clinical interview, and administered tests. (Tr. 1179-87.) Dr. Dobles ruled out bipolar disorder and diagnosed Plaintiff with PTSD, major depressive disorder, and panic disorder with agoraphobia. (Tr. 1186.) Dr. Dobles added that Plaintiff's "psychiatric symptoms are quite disruptive to her daily functioning and would likely interfere with her ability to find and maintain employment[.]" (Tr. 1186.)

In a Mental Residual Function Capacity Report dated September 2, 2014, Dr. Dobles opined, among other things, that Plaintiff suffers from marked limitations (i.e., "[a] limitation which precludes the ability to perform the designated activity on a regular and sustained basis,

i.e., 8 hours a day, 5 days a week, or an equivalent work schedule") in her ability to: (1) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and (2) "accept instructions and respond appropriately to criticism from supervisors." (Tr. 1188-89.)

In 2017, Dr. Dobles re-examined Plaintiff, re-administered tests, reviewed Plaintiff's records, compared Plaintiff's 2014 and 2017 tests results, and obtained updated information during a clinical interview. (Tr. 1428-37.) Dr. Dobles again diagnosed Plaintiff with PTSD, major depressive disorder, and panic disorder with agoraphobia. (Tr. 1436.) Dr. Dobles also noted that "[g]iven the duration and persistence of her symptoms even with treatment, it is highly likely that [Plaintiff's] symptoms and functioning would continue in the future as it is currently." (Tr. 1436.) In addition, Dr. Dobles estimated that Plaintiff's "psychiatric impairments [would] prevent her from being able to maintain a regular work schedule . . . [at least] 4 days per month." (Tr. 1442.)

In a Mental Residual Function Capacity Report dated July 24, 2017, Dr. Dobles opined, among other things, that Plaintiff suffers from marked limitations (i.e., "[a] limitation which precludes the ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent work schedule") in her ability to: (1) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," (2) "work in coordination with or proximity to others without being distracted by them," (3) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and (4) "travel in unfamiliar places or use public

transcription." (Tr. 1444.) Dr. Dobles added that Plaintiff suffers from up to marked limitations in her ability to "accept instructions and respond appropriately to criticism from supervisors." (Tr. 1444.)

The ALJ discounted Dr. Dobles' opinions because the ALJ found that they relied too heavily on Plaintiff's reports and were inconsistent with Plaintiff's activities and Dr. Dobles' test results:

> Little weight has been given to the various opinions of the examining psychologist, Dr. Dobles (17F; 26F). [Dr. Dobles] relied heavily upon [Plaintiff's] report[s] and the strict limitations that she assigned [Plaintiff] are not consistent with the objective testing upon examination, which showed average to mildly impaired functioning. [Dr. Dobles'] limitations are further inconsistent with [Plaintiff's] reported daily activities, which included assisting people with DHS issues, working to become a foster parent, and attending family functions.

(Tr. 35.)

The Court concludes that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Dobles' opinions. As discussed above, the ALJ erred in discounting Plaintiff's testimony based on her reported activities. Accordingly, the Court concludes that the ALJ also erred in discounting Dr. Dobles' opinions based on Plaintiff's reported activities. *See Dau v. Berryhill*, No. 15-1380, 2018 WL 3913266, at *6 (W.D. Wash. Aug. 16, 2018) ("The ALJ's second reason for rejecting Dr. Skelton's . . . opinion, that it was contradicted by Dau's daily activities, fails for the same reason her rejection of Dau's symptom testimony on this basis failed.").

The ALJ also erred in discounting Dr. Dobles' opinions on the grounds that they are "not consistent with the objective testing upon examination" and "relied heavily upon" Plaintiff's reports. In *Buck v. Berryhill*, 869 F.3d 1040, 1045 (9th Cir. 2017), the state agency referred the claimant to a psychologist for a psychiatric evaluation. *Id.* The psychologist performed both a

clinical interview and mental status examination as part of his evaluation. *Id.* The ALJ rejected the psychologist's opinion based on its reliance on the claimant's self-reported symptoms. *Id.* at 1049. The Ninth Circuit held that the ALJ erred in rejecting the psychologist's opinion based on its reliance on the claimant's self-reports and explained that the psychologist relied on objective evidence:

> [The psychologist's] opinion was based in part on [the claimant's] self-report that he had trouble keeping a job. However, [the psychologist] also conducted a clinical interview and a mental status evaluation. These are objective measures and cannot be discounted as a 'self-report.'
>
> . . . Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness. In the context of this case, [the psychologist's] partial reliance on [the claimant's] self-reported symptoms is thus not a reason to reject his opinion.

*Id.* at 1049 (internal citations and ellipses omitted).

Similar to *Buck*, the ALJ here failed to recognize that Dr. Dobles' opinions were based on her clinical interviews, test results, observations of Plaintiff, and review of Plaintiff's medical records. Although Dr. Dobles' clinical interview relied on Plaintiff's self-reports, a clinical interview is an objective measure and cannot be discounted as a self-report. *See Buck*, 869 F.3d at 1045. In any event, it was appropriate for Dr. Dobles to rely on Plaintiff's self-reports, which have not been properly discounted as incredible. *Cf. Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a [claimant's] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."). Accordingly, the Court concludes that the ALJ erred in discounting Dr. Dobles' opinions based on their reliance on Plaintiff's self-reports.

The Court also finds that substantial evidence does not support the ALJ's conclusion that Dr. Dobles' opinions are "not consistent with the objective testing upon examination, which showed average to mildly impaired functioning." (Tr. 35.) In fact, Dr. Dobles' testing of Plaintiff's intellectual functioning showed that Plaintiff scored in the average, "low average to average," "low average to mildly impaired," and "mildly impaired" ranges on various indexes and subtests. (Tr. 1433-34.)

In any event, Dr. Dobles' opinions were also based on "standardized psychological testing," such as the Beck Depression Inventory and the Personality Assessment Inventory ("PAI"). *See David D. v. Saul*, 405 F. Supp. 3d 868, 879 (D. Or. 2019) (noting that a psychologist's opinion was based on "standardized psychological testing," such as the PAI and the Beck Anxiety Inventory). Plaintiff's score on the Beck Depression Inventory was "consistent with a severe level of depression." (Tr. 1435.) According to Dr. Dobles, a "computer interpretation" of Plaintiff's scores on the PIA also revealed that:

- Plaintiff's profile pattern is "usually associated with marked distress and severe impairment in functioning."

- Plaintiff is "a person with significant tension, unhappiness, and pessimism."

- Plaintiff is "quite distressed and acutely aware of her need for help."

- Plaintiff's "low energy, tension, and withdrawal may make it difficult for her to engage in treatment."

- "The combination of hopelessness, anxiety, and stress may place [Plaintiff] at increased risk for self-harm."

- Plaintiff's "life is probably constricted by her psychological turmoil."

- "Although efforts to control anxiety are probably present, they are having little effect in preventing anxiety from intruding and affecting [Plaintiff's] functioning."

- Plaintiff's "anxiety likely interferes in her life, and she probably monitors her environment in a vigilant manner to avoid contact with the feared situation."

- Plaintiff "likely experienced a disturbing traumatic event that continues to distress her and cause anxiety."

- Plaintiff's "life is probably constricted by her anxiety."

- Plaintiff is "likely to be plagued by worry to the degree that her ability to concentrate and attend are significantly compromised."

(Tr. 1434.)

In addition, Dr. Dobles submitted a letter to the Appeals Council after the ALJ issued his decision.[4] (Tr. 2, 18.) In the letter, Dr. Dobles explained that she found that Plaintiff has "significant and serious psychiatric diagnoses," individuals with "serious psychiatric diagnoses are likely to function at their best within low stress supportive environments and with medications," Plaintiff "would be vulnerable to escalating symptoms and decompensation within stressful environments such as in a work environment," and Plaintiff still exhibited "limited functioning" even "in her low stress, sheltered, supportive environment." (Tr. 18.) Additionally,

---

[4] The Appeals Council found that the letter did "not show a reasonable probability that it would change the outcome of the decision," and therefore "did not consider and exhibit this evidence." (Tr. 2.) Nevertheless, the Court may consider the letter, on which Plaintiff relies (*see* Pl.'s Br. at 13), in this appeal. *See Williams v. Berryhill*, No. 17-5885, 2018 WL 6737511, at *3 (W.D. Wash. Apr. 19, 2018) ("[A]lthough the Appeals Council stated '[w]e did not consider and exhibit this evidence,' this statement is contradicted by the Appeals Councils claim '[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision.' The new evidence presented to the Appeals Council is thus reviewable by the Court in determining whether the ALJ's decision remains supported by substantial evidence.") (citation omitted).

Dr. Dobles explained that Plaintiff is "vulnerable to decompensation when performing any job, even low demand jobs," and that Plaintiff is "likely to see a major decline in functioning and an increase in psychiatric symptoms with added stress" from, among other things, "having a job." (Tr. 18.)

Given the evidence described above and the ALJ's failure to recognize that Dr. Dobles relied on several objective measures, the Court concludes that substantial evidence does not support the ALJ's finding that Dr. Dobles' opinions are inconsistent with her objective test results.

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Dobles' opinion.

## IV. OTHER SOURCES

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of her therapist, Kammerer. "Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (quoting *Molina*, 674 F.3d at 1111). Therapists are considered "other sources." *Id.* (citation omitted). "While their opinions must still be evaluated, . . . the ALJ may 'discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so.'" *Id.* (quoting *Molina*, 674 F.3d at 1111).

Kammerer filled out a questionnaire and Mental Residual Functional Capacity Report on April 10, 2017. (Tr. 1359-65.) Kammerer explained that she treated Plaintiff since January 2012, and that Plaintiff suffers from PTSD, panic attacks, and depression. (Tr. 1359-60.) Kammerer added that Plaintiff "does not demonstrate the capacity to" perform full-time work without missing more than "two days per month." (Tr. 1360.) Like Dr. Dobles, Kammerer also opined that Plaintiff suffers from marked limitations in her ability to: (1) "perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances," (2) "work in coordination with or proximity to others without being distracted by them," and (3) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 1362-65.)

The ALJ discounted Kammerer's opinion on the ground that it is inconsistent with Plaintiff's reported activities: "[L]ittle weight has been given to the opinion of Amy Kammerer, LMFT, QMHP (22F), whose multiple marked limitations are inconsistent with [Plaintiff's] reported activities of daily living noted above." (Tr. 35.) As explained above, the ALJ's reliance on Plaintiff's reported activities was misplaced because the ALJ considered evidence about Plaintiff's activities selectively, ignoring evidence that contradicted his findings. Accordingly, the ALJ likewise erred in discounting Kammerer's opinion based on Plaintiff's reported activities.

## V.     REMEDY

### A.     Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2)

the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court finds that the credit-as-true standard is satisfied here and that remand for an award of benefits is warranted.

First, the Court finds that the record has been fully developed. It includes over a decade's worth of treatment notes, testimony from Plaintiff and Barbour about Plaintiff's symptoms and limitations, Dr. Dobles' two functional capacity assessments, and Kammerer's functional capacity assessment. The ALJ and Plaintiff's counsel asked the VE hypothetical questions that addressed whether a worker with Plaintiff's limitations could sustain gainful employment, and the VE testified that Plaintiff's limitations would preclude work. (*See* Tr. 75, reflecting that the VE testified that a worker could not sustain competitive employment if she "miss[ed] work three times a month or more"; *cf.* Tr. 1442, showing that Dr. Dobles estimated that Plaintiff's "psychiatric impairments [would] prevent her from being able to maintain a regular work schedule . . . [at least] 4 days per month"; Tr. 1360, noting that Kammerer stated that Plaintiff "does not demonstrate the capacity to" perform full-time work without missing more than "two days per month").

As to further proceedings, the Commissioner does not argue that further proceedings would serve a useful purpose here. (*See* Def.'s Br. at 17, reflecting that the Commissioner

opposes a remand for an award of benefits solely on the ground that "Plaintiff does not show that she has met the requirements" of the credit-as-true standard, and explains that the Court "need not consider the issue" of serious doubt because "the ALJ's decision is support by substantial evidence"). Even if the Commissioner had argued that further proceedings would be useful, Ninth Circuit precedent and the objectives of the credit-as-true standard foreclose any argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a "useful purpose":

> Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.

*Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Accordingly, the Court finds that Plaintiff meets the first part of the credit-as-true analysis.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, Barbour's testimony, Dr. Dobles' opinions, and Kammerer's opinion. Accordingly, the Court finds that Plaintiff satisfies the second part of the credit-as-true analysis.

Third, if the improperly discredited evidence, such as Dr. Dobles' and Kammerer's opinions, were credited as true, the ALJ would be required to find Plaintiff disabled on remand

because her psychiatric conditions would cause her to exceed the customary tolerances for absences. *Cf. Revels v. Berryhill*, 874 F.3d 648, 662-69 (9th Cir. 2017) (noting that the claimant's treating physician's opinion was contradicted by the non-examining state agency physicians, explaining that "the opinions of nonexamining doctors 'cannot by [themselves] constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician,'" and remanding for an award of benefits because, if credited as true, the claimant's physician's improperly discredited opinion established that she "could not work").

For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits.

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for an award of benefits.

**IT IS SO ORDERED.**

DATED this 9th day of March, 2020.

STACIE F. BECKERMAN
United States Magistrate Judge